# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Rayshawn Earl James Brown,<br><br>　　　　　Defendant. | Case No. 12-cr-172(3) (SRN)<br><br><br><br>**ORDER** |

Julie Allyn and Andrew Dunne, United States Attorney's Office, 600 U.S. Courthouse, 300 S. 4th St., Minneapolis, MN 55415, for the Government

Rayshawn Earl James Brown, Reg. No. 16545-041, FCI-Oxford, PO Box 1000, Oxford, WI, Pro Se Defendant

SUSAN RICHARD NELSON, United States District Judge

　　　　This matter is before the Court on Defendant Rayshawn Earl James Brown's Pro Se Motion for a Judicial Recommendation [Doc. No. 232] and his Pro Se Motion for Release [Doc. No. 233].[1]  The Government filed a response in opposition to Brown's Motion for Release, (Gov't's Opp'n [Doc. No. 235]), along with the perspective of a victim of one of Brown's crimes [Doc. No. 237].  Based on a review of the file, record, and proceedings herein, and for the following reasons, the Court denies Brown's motions.

---

[1]　　　Although Brown is a petitioner in this motion, because the current filings are found in the underlying criminal docket, the Court refers to him as "Defendant" or "Brown" throughout this ruling.

## I.     BACKGROUND

### A.  Procedural and Factual Background

In 2012, the Government charged Brown, along with two co-defendants, for his role in the armed robberies of St. Paul, Minnesota pharmacies.  (*See* Indictment [Doc. No. 19].) Specifically, Brown was charged for:  (1) the robbery of the West Seventh Pharmacy on April 3, 2012, in violation of the Hobbs Act, 18 U.S.C. §§ 1951 and 2, (*id*., Count 1); (2) robbery involving controlled substances, in violation of 18 U.S.C. §§ 2118(a) & 2, (*id*., Count 2); and (3) two counts of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1), with Counts 1 and 2 serving as the underlying crimes of violence.  (*Id*., Counts 3 & 4.)

Brown and the Government later entered into a plea agreement (the "Plea Agreement").  The Government agreed to move to dismiss Counts 2 and 4 of the Indictment in exchange for Brown's guilty plea to Counts 1 and 3.  (*See* Sept. 21, 2012 Minutes [Doc. No. 94].)  Also in the Plea Agreement, Brown admitted to additional relevant conduct, including the armed robbery of Pro Pharmacy on March 27, 2012.  (*See* Plea Agmt. [Doc. No. 97].)  On May 15, 2013, the Court sentenced Brown to 120 months in prison. (Sentencing Judgment at 2 [Doc. No. 174].)  The sentence consisted of 36 months on Count 1 and 84 months on Count 3, to be served consecutively.  (*Id*.)

Brown is incarcerated at FCI-Oxford, in Oxford, Wisconsin.  He has a projected release date of January 25, 2021.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed Apr. 21, 2020).

### B. Parties' Arguments

In Brown's Motion for a Recommendation, he contends that he is eligible for placement in a Residential Reentry Center ("RRC") and seeks a recommendation from the Court to the Bureau of Prisons ("BOP") to that effect.  (Def.'s Mot. for Recommend. at 1.)

In Brown's Motion for Release, he states that he is expected to be released to a halfway house on July 30, 2020.  (Def.'s Mot. for Release at 1.)  However, due to the current COVID-19 pandemic, he seeks an earlier release to a halfway house or home confinement, citing the First Step Act and Second Chance Act in support of his request. (*Id.*)

The Government opposes Brown's Motion for Release.  (Gov't's Opp'n at 1.)  It contends that neither the First Step Act nor the Second Chance Act authorize judicial review of the BOP's placement determinations.  (*Id.*)  In addition, the Government asserts that the BOP is taking appropriate action to curtail the spread of COVID-19 within its facilities.  (*Id.* at 9–10.)

## II.    DISCUSSION

The First Step Act, Pub. L. No. 115-391, was enacted in December 2018, with the goal of reducing federal inmates' recidivism rates.  As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007, *see* 18 U.S.C. § 3624(c)(1).  For instance, amendments to the First Step Act made home confinement potentially available to low-risk prisoners:

Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. *The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.*

18 U.S.C. § 3624(c)(2) (First Step Act amendment in italics).  As the statute provides, authority for the placement of prisoners rests with the BOP.  (*Id.*) (stating, "The Bureau of Prisons shall, to the extent practicable, . . . .").

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act, Pub. L. No. 116-136, to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations.  The BOP began reviewing all inmates who have COVID-19 risk factors, starting with inmates incarcerated at prisons that have experienced COVID-19 cases (FCI-Oakdale, FCI-Danbury, FCI-Elkton) and similarly-situated facilities to determine which inmates are suitable candidates for home confinement.  BOP Update on COVID-19 & Home Confinement, https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last accessed Apr. 21, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners.  *See* 18 U.S.C. § 3624(c)(2).  The First Step Act, CARES Act, and Second Chance Act merely give eligible inmates the possibility to be considered for home confinement or halfway house placement.  *See United States v. Kluge*, No. 17-cr-61 (DWF), 2020 WL 209287 at *3 (D. Minn. Jan 14, 2020) ("Nothing in the statutes amended

by the FSA permits the Court to place Defendant in home confinement. Under the FSA, the authority to place a prisoner remains with the BOP."); *see also Xiao v. La Tuna Fed. Corr. Inst.*, No. EP-19-CV-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement."); *Ward v. Bureau of Prisons*, No. 3:19-CV-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019) (observing that First Step Act and Second Chance Act govern the BOP's discretion to place inmates in particular facilities, including home confinement), report and recommendation adopted, No. 3:19-CV-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019).

Although the First Step Act expanded release opportunities, courts have observed that "it is BOP—not the courts—who decides whether home detention is appropriate. . . . Rather than mandate any particular home confinement decision, Congress instead directed BOP to place prisoners on home confinement 'to the extent practicable.'" *United States v. Yates*, No. 15-40063-01-DDC, 2019 WL 1779773, *4 (D. Kan. Apr. 23, 2019); *see also United States v. Burkhart*, No. 6: 03-036-DCR, 2019 WL 615354, *2 (E.D. Ky. Feb. 13, 2019) (stating that the First Step Act "did not modify the requirement that the Bureau of Prisons, not the Court, make the decision to place a prisoner on home confinement or in a residential re-entry center.").

It is also well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement. *Khdeer v. Paul*, No. 18-CV-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018) ("Petitioner does not have a constitutionally protected liberty interest in serving his sentence at a particular

institution.") (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (stating the "Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison"); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) (stating "there is no liberty interest in assignment to any particular prison")), report and recommendation adopted, 2019 WL 79318 (D. Minn. Jan. 2, 2019).  Home confinement is a place of confinement.  *See* 18 U.S.C. § 3624(c).

For all of these reasons, the Court lacks jurisdiction to grant Brown's motion under the First Step Act, Second Chance Act, or CARES Act.

Although Brown does not invoke 18 U.S.C. § 3582(c) as a basis for relief, he does not appear to have exhausted his administrative remedies in this regard, and is therefore not eligible for relief under the statute.  *See* § 3582(c)(1)(A) (stating that courts may consider a motion for release only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.").  The Court cannot consider a motion for compassionate release for which the prisoner has not first sought relief from the BOP.  *See, e.g., United States v. Bergren*, No. 00-cr-375 (DWF/RLE), 2020 WL 1910585, at *1 (D. Minn. Apr. 20, 2020) (denying motion for compassionate release due to COVID-19 for failure to exhaust and on the merits); *United States v. Jenkins*, 4:15-CR-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020) ("Simply put, the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the Bureau of Prisons first.");  *United States v. Annis*, 16-cr-1951 (JRT/KMM), 2020 WL

6

1812421, at *2 (D. Minn. Apr. 9, 2020) (finding the court had no authority to grant compassionate release due to COVID-19 pursuant to 18 U.S.C. § 3582(c)(1)(A) because the defendant had not exhausted his administrative remedies).

Moreover, even if the Court had authority to entertain Brown's request, release under these facts is not warranted. Brown, who is 28 years old, does not identify any health condition that places him at greater risk of harm from COVID-19, nor are there any cases of the virus in FCI-Oxford as of this writing. BOP COVID-19 Coronavirus Resource Page, https://www.bop.gov/coronavirus/ (last accessed Apr. 21, 2020). Since January 2020, the BOP has been preparing to mitigate the effects of a potential COVID-19 outbreak. BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed Apr. 21, 2020). Among the measures the BOP has taken are: (1) prohibiting all social and volunteer visits; (2) suspending inmate movement, with limited exceptions; (3) suspending legal visits for 30 days (with case-by-case exceptions); (4) screening staff through self-reporting and temperature checks; (5) screening new inmates, quarantining asymptomatic inmates, and isolating and testing inmates with exposure risk factors; and (6) modifying operations to maximize social distancing and to limit group gatherings. BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed Apr. 21, 2020). These efforts appear to have been successful at the majority of federal prisons, and as of this writing, at FCI-Oxford.

While the Court understands Brown's concerns about his health and safety, his Motion for Release is denied for all of the reasons stated above. In addition, Brown's

earlier request for a recommendation from the Court for placement in a halfway house is denied.

**III.    CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

**1.**   Brown's Pro Se Motion for a Judicial Recommendation [Doc. No. 232] is **DENIED**; and

**2.**   Brown's Pro Se Motion for Release [Doc. No. 233] is **DENIED**.

.

Dated: April 21, 2020

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge